COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO. 2-07-347-CV

 

 

IN THE
INTEREST OF D.E.H., 

A MINOR CHILD

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

OPINION ON EN BANC RECONSIDERATION

 

                                              ------------

A majority of the court ordered en banc
reconsideration of the court=s prior opinion. 
See Tex. R. App. P. 49.7. 
We withdraw our opinion and judgment of December 4, 2008, and substitute
this opinion and judgment in their place.

Appellant E.L. appeals the termination of her
parental rights to her daughter, D.E.H. 
In a single point, she argues that she involuntarily executed the
affidavit relinquishing her parental rights to D.E.H. and that the trial court
abused its discretion by denying her motion for new trial.  We will affirm.








D.E.H. was born in February 2006 to E.L. and
A.H.  Appellee Texas Department of Family
and Protective Services (ATDFPS@) received a referral sometime in September 2006
regarding a concern of physical abuse to D.E.H. 
D.E.H. had been taken to Cook Children=s Medical Center, where it was determined that
she had two fractures to each femur, four fractures to each tibia, multiple rib
fractures in multiple stages of healing, a liver contusion, and a spleen
lacerationCinjuries
consistent with child abuse.  The bone in
her hip area had also been completely snapped off of her growth plate.

A TDFPS supervisor visited the hospital and
gathered information from hospital staff, family members, and friends.  A.H. admitted to punching and slapping D.E.H.
on the back, twisting her leg, and shaking her and squeezing her on multiple
occasions.  A.H. admitted to an
investigator that he caused D.E.H.=s injuries when he became irritated and Alost control@ after D.E.H. started crying at night; on about
three separate occasions, he grabbed her, shook her, and punched her in the
stomach.  TDFPS accordingly found reason
to believe that D.E.H. had been physically abused by E.L. and A.H., negligently
supervised by E.L., and medically neglected by both E.L. and A.H.  TDFPS removed D.E.H. from E.L.=s and A.H.=s custody and care and placed her in foster care
with Appellees S.G. and B.G., reasoning that she would be in extreme danger if
returned to her parents=
care. 








In September 2006, TDFPS filed its petition for
protection of a child, for conservatorship, and for termination in suit
affecting the parent-child relationship. 
On September 10, 2007, E.L., her attorney, and a few of E.L.=s family members participated in a mediation with
the foster parents.  E.L. executed an
affidavit relinquishing her parental rights to D.E.H. at some point during the
mediation.  She also entered into a
mediated settlement agreement with the foster parents, which set forth a
post-termination contact schedule for her and D.E.H. 

The trial court subsequently signed an order on
September 19, 2007, terminating the parent-child relationship between E.L. and
D.E.H.[1]  The trial court found by clear and convincing
evidence that E.L. had executed an unrevoked or irrevocable affidavit of
relinquishment of parental rights as provided by chapter 161 of the family code
and that termination of E.L.=s parental rights to D.E.H. is in D.E.H.=s best interest. 
The order appointed TDFPS as permanent managing conservator of D.E.H.
and the foster parents as possessory conservators of D.E.H.








E.L. filed a motion for new trial and notice of
points of appeal on October 4, 2007.  She
filed her first amended motion for new trial and notice of points of appeal
five days later, listing her Apoints of appeal@ as follows:

a.  Extreme
coercion by other parties to the suit, both through promises and threats, was
used to induce Movant to sign the affidavit of relinquishment.

 

b.  The
mother was placed under great duress by other parties to the suit, both through
promises and threats, in order to induce her to sign the affidavit of
relinquishment.

 

c.  Fraud
in the inducement was used to convince Movant that she had no choice but to
sign the affidavit of relinquishment.

 

On
October 18, 2007, the trial court held a hearing on E.L.=s motion for new trial, which it denied.








In her sole point, E.L. argues that the trial
court abused its discretion by denying her motion for new trial because she
established that she did not voluntarily execute the affidavit of
relinquishment that underlies the trial court=s termination order.[2]  She contends that she executed the
relinquishment affidavit in exchange for the rule 11 agreement with the foster
parents (the prospective parents) providing for post-termination visits between
her and D.E.H.  E.L. argues that the
visitation agreement is unenforceable for its failure to comply with family
code sections 161.206(b), 161.2061(a), and 161.2062 and that she would not have
signed the affidavit of relinquishment Abut for the visitation agreement.@[3] 
Consequently, E.L. argues that she did not voluntarily sign the
affidavit of relinquishment because she executed it in exchange for a legally
unenforceable promiseCthe
rule 11 post-termination visitation agreement.








To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling, if they are not
apparent from the context of the request, objection, or motion. Tex. R. App. P.
33.1(a); see also Tex. R. Evid. 103(a)(1).  If a party fails to do this, error is not
preserved, and the complaint is waived.  Bushell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g).  The
complaint on appeal must be the same as that presented in the trial court.  See Banda v. Garcia, 955 S.W.2d
270, 272 (Tex. 1997); Wohlfahrt v. Holloway, 172 S.W.3d 630, 639B40 (Tex. App.CHouston [14th Dist.] 2005, pet. denied) (ATo have preserved error, a party=s argument on appeal must comport with its
argument in the trial court.@), cert. denied, 549 U.S. 1052 (2006); Hoxie
Implement Co., Inc. v. Baker, 65 S.W.3d 140, 151 (Tex. App.CAmarillo 2001, pet. denied) (A[G]iven that the contention before us does not
comport with the objection raised below, that before us was and is waived.@).  An
appellate court cannot reverse based on a complaint not raised in the trial
court.  Banda, 955 S.W.2d at
272.  A[A]llowing appellate review of unpreserved error
would undermine the Legislature=s intent that cases terminating parental rights
be expeditiously resolved.@  In re
L.M.I., 119 S.W.3d 707, 711 (Tex. 2003), cert. denied, 541 U.S. 1043
(2004). 








E.L.=s argument that she did not voluntarily sign the
affidavit of relinquishment because the rule 11 agreement regarding
post-termination contact is unenforceable for failure to comply with family
code sections 161.206(b), 161.2061(a), and 161.2062 does not comport with the
arguments that she made in her original motion for new trial, in her amended
motion for new trial, or at the hearing on her motion for new trial.  Specifically, E.L. alleged coercion, duress,
fraud in the inducement, and ineffective assistance of counsel as the grounds
for a new trial in her original motion for new trial.  With the exception of the ineffective
assistance ground, her amended motion for new trial listed the same grounds.

At the hearing on her motion for new trial, she
testified that it was her understanding that she would continue to be able to
visit D.E.H. if she signed the affidavit relinquishing her parental rights to
D.E.H.; otherwise, she would lose her rights to D.E.H.  Although Ait was [her] decision@ to sign the affidavit and that she Amore or less@ understood what was written therein, she
confirmed that she was never threatened during the mediation, but she testified
that she felt Apressured@ to sign the affidavit.  E.L. further testified that she felt like she
was Aforced@ to sign the relinquishment.  According to E.L.=s counselor, E.L. felt Adistressed,@ Apressured,@ and as though her choices were limited to either
never seeing D.E.H. again or signing the affidavit of relinquishment.  








At no point during the hearing on her motion for
new trial did E.L. argueCnor
is it apparent that she was attempting to argueCthat her execution of the affidavit of
relinquishment was involuntary because the rule 11 agreement is unenforceable
for failure to comply with family code sections 161.206(b), 161.2061(a), and
161.2062.  There is a reason for
this.  A party seeking to overturn a termination
order based on an unrevoked affidavit of relinquishment is limited in her
attack to arguing fraud, duress, or coercion in the execution of the affidavit,
Tex. Fam. Code Ann. ' 161.211(c)
(Vernon 2008); see In re M.A.W., 31 S.W.3d 372, 375B76 (Tex. App.CCorpus Christi 2000, no pet.), hence the fraud,
duress, and coercion grounds specifically set forth in E.L.=s amended motion for new trial and the testimony
at the hearing purporting to relate to duress and coercion.  E.L.=s argument on appeal, however, is that she did
not voluntarily sign the affidavit of relinquishment because the Rule 11
agreement is unenforceable.  She does not
argue that fraud, duress, or coercion played any role in her signing of the
affidavit of relinquishment.  This is
made further apparent by examining the meanings of fraud, duress, or coercion.








Coercion occurs if someone is compelled to
perform an act by force or threat.  Arnett
v. Arnett, No. 03-05-00056-CV, 2008 WL 1912058, at *1 (Tex. App.CAustin May 2, 2008, pet. filed) (mem. op.); see
also Tex. Penal Code Ann. ' 1.07(a)(9) (Vernon Supp. 2009) (setting
forth definition of Acoercion@); B.A.L. v. Edna Gladney Home, 677 S.W.2d
826, 831 (Tex. App.CFort
Worth 1984, writ ref=d
n.r.e) (stating that the Aessence
of an >undue influence= claim is overcoming the free will of an
individual and substituting the will of another, thereby causing a person to do
an act which he would not otherwise have done@ and that A>[o]verreaching= is tricking, outwitting, or cheating a person
into doing an act which he would not otherwise have done@).  Duress
occurs when, due to some kind of threat, a person is incapable of exercising
her free agency and unable to withhold consent. 
Arnett, 2008 WL 1912058, at *1; but see Methodist Mission Home
of Tex. v. N.A.B., 451 S.W.2d 539, 543 (Tex. Civ. App.CSan Antonio 1970, no writ) (reasoning that Aexerted influence cannot be branded as >undue= merely because it is persuasive and effective@).  Fraud
may be committed through active misrepresentation or passive silence and is an
act, omission, or concealment in breach of a legal duty, trust, or confidence
justly imposed, when the breach causes injury to another or the taking of an
undue and unconscientious advantage.  Arnett,
2008 WL 1912058, at *1; Gaspard v. Beadle, 36 S.W.3d 229, 235 (Tex. App.CHouston [1st Dist.] 2001, pet. denied) (listing
fraud elements as a material misrepresentation made; the representation was
false; when the representation was made, the speaker knew it was false or made
it recklessly without any knowledge of its truth; the speaker made the
representation with the intent that it should be acted upon by the party; the
party acted in reliance upon the representation; and the party thereby suffered
injury).  A misrepresentation is a
falsehood or untruth with the intent to deceive.  Gaspard, 36 S.W.3d at 235. 








E.L.=s appellate argument that she did not voluntarily
sign the affidavit because the Rule 11 agreement is unenforceable is not an
argument that she did not voluntarily sign the affidavit because she was compelled
to perform some act by force or threat. 
E.L.=s
appellate argument that she did not voluntarily sign the affidavit because the
Rule 11 agreement is unenforceable is not an argument that she did not
voluntarily sign the affidavit because she was incapable of exercising her free
agency and was unable to withhold consent due to some kind of threat.  E.L.=s appellate argument that she did not voluntarily
sign the affidavit because the Rule 11 agreement is unenforceable is not an
argument that she did not voluntarily sign the affidavit because there was some
active misrepresentation or passive silence which was an act, omission, or
concealment in breach of a legal duty, trust, or confidence justly imposed that
caused her injury or caused her to be unduly and unconscientiously taken
advantage of.  Thus, E.L.=s appellate argument that she did not voluntarily
sign the affidavit because the Rule 11 agreement is unenforceable is not an
argument that she involuntarily signed the affidavit of relinquishment because
of fraud, duress, or coercion. 








Because E.L.=s appellate argument does not comport with the
grounds asserted in her amended motion for new trial or the testimony at the
hearing on her motion for new trial, she has failed to preserve her complaint
for appellate review.  See Tex. R.
App. P. 33.1(a)(1); L.M.I., 119 S.W.3d at 710B12 (holding that appellant failed to preserve for
appeal complaints regarding signed affidavits relinquishing parental rights).

Even if E.L. had preserved her complaint, the
trial court did not abuse its discretion by denying her motion for new
trial.  

Appellate courts review a trial court=s decision denying a motion for new trial under
an abuse of discretion standard of review. 
Dir., State Employees Workers= Comp. Div. v. Evans, 889 S.W.2d 266, 268 (Tex. 1994).  A trial court abuses its discretion when it
acts in an arbitrary or unreasonable manner or when it acts without reference
to any guiding rules or principles.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied, 476 U.S.
1159 (1986).








Once an affidavit has been shown to comply with
the requirements of section 161.103 of the family code, the affidavit may be
set aside only upon proof, by a preponderance of the evidence, that the
affidavit was executed as a result of fraud, duress, or coercion.  In re R.B., 225 S.W.3d 798, 804 (Tex. App.CFort Worth 2007, no pet.); In re N.P.T.,
169 S.W.3d 677, 679 (Tex. App.CDallas 2005, pet. denied); In re D.R.L.M.,
84 S.W.3d 281, 296 (Tex. App.CFort Worth 2002, pet. denied), superseded by
statute on other grounds, Tex. Fam. Code Ann. ' 263.405(i) (Vernon 2008); see also Tex.
Fam. Code Ann. ' 161.211(c).  The burden of proving such wrongdoing is on
the party opposing the affidavit.  R.B.,
225 S.W.3d at 804.[4]








E.L. contends that she executed the affidavit of
relinquishment in exchange for the rule 11 visitation agreement and that
because the rule 11 visitation agreement is unenforceable, she involuntarily
executed the affidavit of relinquishment. 
At the hearing on her motion for new trial, she testified that A[t]he agreement wasn=t done by [her] own will,@ that she Adidn=t sign [the affidavit of relinquishment] out of
[her] own will,@
that she signed the affidavit because she felt Apressured@ and Aforced,@ and that she did not sign the agreement under
her Afree will.@  The lack
of Afree will,@ the Apressure,@ and the Aforce@ that E.L. testified she experienced at the
mediation, however, was not coercion, fraud, or duress as identified and
defined above.  See Gaspard, 36
S.W.3d at 234B35;
Edna Gladney Home, 677 S.W.2d at 831; Arnett, 2008 WL 1912058, at
*1.  Norma Bartholomew, E.L.=s counselor, testified that E.L. was informed
that if her case went to trial, the likely outcome would be that she would have
her rights terminated and that she would never see D.E.H. again.  E.L.=s other option was to sign the affidavit of
relinquishment and enter into a rule 11 agreement with the intervenors for
limited visitation with D.E.H. 
Consistent with E.L.=s options, Bartholomew specifically identified
the source of the pressure that E.L. experienced as Alosing her parental rights and never being able to see her child again versus
some hope of limited visitation for the life of the child until the child
was grown.@
[Emphasis added.]  As for the Acoercion@ that E.L. purportedly experienced, Bartholomew testified,
AI think [E.L.] was very frightened about her
options and she felt a threat of losing contact with her child.@ [Emphasis added.]  Although Bartholomew thought there was Asome degree@ of coercion based on how E.L. explained the
options to her (if the case went to court, E.L. would never see the child
again), Bartholomew opined that it was uncertainty, confusion, and anguish that
E.L. experienced in weighing her limited options.

James Masek, E.L.=s attorney, opined similarly.  He testified that there was not any undue pressure
exerted on E.L. by anyone at the mediation. 
Instead, he testified that A[i]t=s just a very emotional time.  She=s giving up a child.  She was very emotional at the time . . . .@  Masek
agreed that E.L. had made a Athoughtful decision, albeit a very emotional
decision,@
to sign the affidavit of relinquishment.








Consistent with Bartholomew=s and Masek=s testimony, E.L. herself identified the source
and nature of the Apressure@ and the Aforce@ that she claimed to have experienced at the
mediation as feeling like she Adidn=t have any way out,@ that is, her only options were to sign the
affidavit of relinquishment and the rule 11 visitation agreement and hope to
have limited future visitation with D.E.H. or go to trial and take the chance
of having her parental rights terminated. 
She testified as follows:

[Intervenors=
attorney]:  You testified that you signed
[the affidavit of relinquishment] under duress. 
Do you remember that word?

 

[E.L.]:  Yes.

. . . .

[Intervenors= attorney]: 
What does duress mean to you?

[E.L.]:  Pressure.

[Intervenors= attorney]: 
What kind of pressure?

[E.L.]:  That I didn=t have anything more to do.

[Intervenors= attorney]: 
Anything else?

[E.L.]:  I didn=t have another way out.

[Intervenors=
attorney]:  That was the extent of
your pressure, that you didn=t have any way
out?  Is that your testimony?

 

[E.L.]:
Yes.  [Emphasis added.] 








Further, E.L. testified that the consequences of
signing the affidavit of relinquishment were explained to her, that she
discussed the rule 11 agreement and affidavit of relinquishment at length with
her attorney, that she A[m]ore
or less@ understood the Afinality of signing [the agreement],@ and that she spoke with her attorney about
having a jury trial prior to the mediation. 
Masek, who is fluent in Spanish, spent at least half of the mediation
talking to E.L. about the affidavit of relinquishment.  He interpreted the affidavit of relinquishment
for her, he read it to her at least twice (some parts more than twice), and he
went over it with her line by line.  E.L.
acknowledged that Masek discussed with her the meaning of the affidavit of
relinquishment and that Masek told her that it was her choice to sign it or not
sign it.  E.L. initialed every page of
the affidavit, and she placed her initials beside every single line of a
paragraph that is written in bold letters and located at the end of the
affidavit that states as follows:

I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT
UNTIL I HAVE READ AND UNDERSTOOD EACH WORD, SENTENCE, AND PARAGRAPH IN IT.  I REALIZE THAT I SHOULD NOT SIGN THIS
AFFIDAVIT OF RELINQUISHMENT IF THERE IS ANY THOUGHT IN MY MIND THAT I MIGHT
SOMEDAY SEEK TO CHANGE MY MIND.  I
REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT OF RELINQUISHMENT IF I AM NOT
THINKING CLEARLY BECAUSE OF ILLNESS, MEDICATION, MY EMOTIONAL STATE, OR ANY
OTHER REASON.  BECAUSE I REALIZE HOW
IMPORTANT THIS DECISION IS FOR THE FUTURE OF MY CHILD, I HAVE PUT MY INITIALS
BESIDE EVERY LINE OF THIS PARAGRAPH SO THAT IT WILL ALWAYS BE UNDERSTOOD THAT I
HAVE READ THIS AFFIDAVIT OF RELINQUISHMENT, UNDERSTAND IT, AND DESIRE TO SIGN
IT.

 








E.L.
declared in the affidavit that she was relinquishing her parental rights freely
and voluntarily.  The affidavit states in
relevant part as follows:

I declare that I fully understand the meaning of
this affidavit of relinquishment and the finality of my action in signing it,
and, understanding all this, I am signing this freely, voluntarily, and
with the firm conviction that this decision is the best available alternative
for my child.  [Emphasis added.] 

 

Three
of E.L.=s family members were present at the mediation
and participated to a certain extent.  According to
Masek, 

[W]e did it [review the affidavit of
relinquishment] slowly.  We would
stop.  And the judge was there.  The judge spoke . . . Spanish, so she would
also -- we would kind of back off and say, we would kind of rest for a little
while and the family would talk.  It went
really slowly.

Masek
also explained to E.L. that the rule 11 agreement was an agreement between only
her and the intervenors and that it was not Aa contract that we could take to court.@  Towards
the end of her testimony, E.L. said, A[B]ottom line, it was my decision.@








Bartholomew=s, Masek=s, and E.L.=s testimony clarifies that E.L. did not
experience coercion, fraud, or duress as contemplated by family code section
161.211(c).  See Gaspard, 36
S.W.3d at 234B35;
Edna Gladney Home, 677 S.W.2d at 831; Arnett, 2008 WL 1912058, at
*1.  E.L. failed to demonstrate by a
preponderance of the evidence that her execution of the affidavit of
relinquishment in exchange for an allegedly legally unenforceable promise
resulted from fraud, duress, or coercion. 
Assuming that E.L. had preserved her appellate argument for appeal,
which she did not do, the trial court did not abuse its discretion by denying
her motion for new trial.

We overrule E.L.=s sole point and affirm the trial court=s judgment.

 

 

DIXON W.
HOLMAN

JUSTICE

EN
BANC

LIVINGSTON, J. filed a dissenting opinion.

WALKER, J. filed a concurring and dissenting
opinion in which DAUPHINOT and GARDNER, JJ., join.

 

DELIVERED: 
December 3, 2009

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-07-347-CV

 

 

IN THE INTEREST OF D.E.H., 

A MINOR CHILD

 

                                              ------------

 

           FROM THE 323RD DISTRICT COURT OF
TARRANT COUNTY

 

                                              ------------

 

DISSENTING OPINION TO OPINIONS ON EN BANC RECONSIDERATION

 

                                              ------------

Repeatedly throughout the motion for new trial
hearing, appellant, E.L., testified that she would not have signed the
affidavit of relinquishment as required by the mediated settlement agreement if
she had known that the promised visitation would not continue.  For this reason, I respectfully dissent to
the plurality opinions on rehearing en banc and the resulting judgment.








                                              The
Law

AImplicit in the family code is the requirement
that the affidavit of voluntary relinquishment be voluntarily executed.@  In re
D.R.L.M., 84 S.W.3d 281, 296 (Tex. App.CFort Worth 2002, pets. denied), superseded by
statute on other grounds, Tex. Fam. Code Ann. ' 263.405(i) (Vernon 2008).  An involuntarily executed affidavit is a
complete defense to a termination decree based solely on such an
affidavit.  Id. (citing Vela v.
Marywood, 17 S.W.3d 750, 759 (Tex. App.CAustin 2000), pet. denied, 53 S.W.3d 684
(Tex. 2001)).  The proponent of the voluntary affidavit of relinquishment
has the burden to establish by clear and convincing evidence that the affidavit
was executed in accordance with family code section 161.103.  Tex. Fam. Code Ann. ' 161.103 (Vernon 
2008); D.R.L.M., 84 S.W.3d at 296 (citing In re V.R.W., 41
S.W.3d 183, 190 (Tex. App.CHouston [14th Dist.] 2001, no pet.), and Vela,
17 S.W.3d at 758).  Previously, we have
recognized that evidence that an affidavit of voluntary relinquishment was
signed, notarized, witnessed, and executed in compliance with family code
section 161.103 is prima facie evidence of its validity.  See D.R.L.M., 84 S.W.3d at 296.  The opponent of the affidavit may set it
aside only upon proof, by a preponderance of the evidence, that the affidavit
was executed as a result of fraud, duress, or coercion.  Id. (citing Tex. Fam. Code Ann. ' 161.211(c) (Vernon 2008)).








Recently, however, this court has noted a shift
in the way some Texas Supreme Court justices would handle reviews of
terminations based upon a challenge to the voluntariness of an affidavit of
relinquishment.  See In re R.B.,
225 S.W.3d 798, 804 (Tex. App.CFort Worth 2007, no pet.).  In R.B., we noted that the supreme
court Ahas opined that both the burden and standard of
proof for setting aside an affidavit of relinquishment should be >reformulated.=@  Id. (citing
In re L.M.I., 119 S.W.3d 707 (Tex. 2003), cert. denied, 541 U.S.
1043 (2004)).  In L.M.I., the
plurality noted that when there is an issue on the voluntariness of an
affidavit of relinquishment, due process requires that the proponent of the
affidavit retain the burden to prove, by clear and convincing evidence, that it
was executed voluntarily.  Id.
(citing L.M.I., 119 S.W.3d at 715B16 (Wainwright, J., concurring), 720 (Owen, J.,
concurring and dissenting), 739 (Hecht, J., dissenting)).  According to L.M.I.C and likewise R.B., in which we looked
with favor on the analysis in L.M.I. but declined to adopt it as
unnecessary,

The United States Supreme Court has held that the
Due Process Clause of the Fourteenth Amendment requires that before a state can
irrevocably sever the rights of a parent, the evidence of grounds for
termination must at least be clear and convincing.  Accordingly, when
the basis for termination is an affidavit of relinquishment, there must be
clear and convincing evidence that the waiver was knowing, intelligent, and
voluntary.

 








L.M.I.,
119 S.W.3d at 716 (Owen, J., concurring and
dissenting) (citation omitted); R.B., 225 S.W.3d at 804B05.[1]  Neither our court in R.B. nor the
Dallas court in N.P.T. specifically adopted the standard because it was
unnecessary to the disposition of those casesCboth courts held that the proponent of the
affidavit would have been successful under either standard.  R.B.,
225 S.W.3d at 805; N.P.T., 169 S.W.3d at 680.  Here, however, the answer is less clear.  For that reason, we should adopt the L.M.I.
standard in this case to ensure that all parents= due process rights are protected; the plurality
opinion on rehearing en banc in this case fails to shift the burden of proof
back to the proponent of the affidavit to show by clear and convincing evidence
that the affidavit was executed voluntarily. 
I dissent from the plurality opinion on rehearing en banc=s failure to apply this standard.

                                       Preservation
of Error








The plurality opinion on rehearing en banc also
states that appellant has waived her complaint on appeal because it was not
presented at trial and does not comport with any complaint she presented at
trial.  In particular, the plurality
opinion on rehearing en banc contends that appellant did not raise the Rule 11
and mediated settlement agreements= failure to comply with the family code at
trial.  See Tex. Fam. Code Ann. ' 161.2061(a) (Vernon 2008).  However,
appellant could not object or complain until she actually saw that the Order of
Termination completely failed to incorporate the terms of the mediated
settlement agreement or the Rule 11 agreement into it.  See D.R.L.M., 84 S.W.3d at 297
(holding mother could not have pleaded in trial court the involuntariness of
her affidavit on the ground that she believed the trial court was required to
follow her choice of managing conservator and therefore had not waived right to
challenge voluntariness of affidavit). 
Therefore, she clearly brought the issue to the trial court=s attention as soon as practicable.  A review of the amended motion for new trial
and the reporter=s
record from the hearing on the motion for new trial show more clearly what
occurred.








The amended motion for new trial attacks quite
clearly the sole basis for the termination: appellant=s affidavit of relinquishment.  The motion challenges the voluntariness of
the affidavit, a fundamental prerequisite for termination granted solely on
this basis.  See Tex. Fam. Code
Ann. ' 161.001(1)(K), (2) (Vernon Supp.
2009).  The voluntariness of her
relinquishment is appellant=s sole complaint. 
The motion broadly claims coercion Athrough promises and threats@ to induce appellant to sign the affidavit of
relinquishment, along with fraud in the inducement to convince appellant that
she had no choice but to sign the affidavit. 
While it does not mention the mediated settlement agreement=s failure to comply with specific provisions of
the Texas Family Code, it clearly mentions promises, threats, or fraud being
involved.  Therefore, I would conclude
and hold that E.L. preserved her challenge to the voluntariness of her
affidavit.

                           Evidence
of Voluntariness of Affidavit








Furthermore, as explained by the plurality
opinion on rehearing en banc, appellant signed two documents at the end of the
mediated settlement conference: a mediated settlement agreement and an attached
Rule 11 agreement, which were properly filed as part of the record in the
termination proceeding.  The mediated
settlement agreement and the Rule 11 agreement clearly provide for appellant=s post-termination visitation with her
daughter.  Additionally, the agreements state that it is the intent
of the parties that the agreements shall be enforceable under sections 6.602
and 153.0071 of the Texas Family Code, both of which provide for the
enforceability of such agreements as judgments in court.  See id. ' 6.602 (Vernon 2006), ' 153.0071 (Vernon Supp. 2009).  The agreements also clearly contemplate the
preparation of additional documents to effect the agreements and require the
parties= future cooperation in the preparation and
execution of such documents.  Moreover,
throughout the hearing on appellant=s motion for new trial, appellant continuously
and repeatedly testified to her main complaint, without objection:  that she would not have signed any affidavit
of relinquishment and would have gone to trial if she had not been given the
promises of the continuous right to see and visit her daughter in the future.

For example, at the beginning of her direct
examination, appellant testified without objection, AThe agreement wasn=t done by my own will. The agreement, I did it
because they told me, whether I signed or not, they were going to take my
rights.@  And she
continued, A[T]hey
told me about the paper, it says that with this paper, neither the [foster
parents] or me could break the plan that we made,@ again without objection.  And again, on redirect, appellant testified, A[I believed] that the [mediated settlement]
agreement was going to be held.  It was
going to be in place forever.@  The licensed
professional counselor testified that appellant believed Ashe would be allowed to see her child for the
rest of her life because there had been a judge who had overseen the mediation.@








Moreover, the mediated settlement agreement says
that the parties will appear in court Ato present evidence and secure rendition of
judgment in accordance with [it]@ and that AEITHER PARTY SHALL BE ENTITLED TO JUDGMENT ON
THIS AGREEMENT UNDER THE PROVISIONS OF SECTION 153.0071 OR SECTION 6.602 OF THE
TEXAS FAMILY CODE.@

Further supporting the lack of voluntariness, the
record shows that appellant is non-English speaking.  She was not provided an interpreter prior to
the hearing on the motion for new trial, although her trial counsel and the
Department=s
caseworker were Spanish-speaking. 
However, a careful reading of the record showsCeven with this helpCthe obvious problems with the language barrier
and counsel=s
ability to inform or examine appellant. 
Appellant had to rely on what her attorney told her because she could
not understand what people were saying when they testified.  The record also shows that appellant had
numerous difficulties in terminology, both legal and otherwise.








For example, appellant testified on
cross-examination that no one read the entire English Affidavit of
Relinquishment to her:  AWell, they explained it to me, but it wasn=t read to me.@  No one
was telling appellant what was being asked or said during questions in the
hearing.  And in support of her claim of
pressure or coercion, appellant called her therapist to the stand, who said
that appellant telephoned her during the actual mediation process because she
was Avery distressed@ and Apressured@ to sign the mediated settlement agreement or
risk losing seeing her child forever. 
Her therapist, who spoke Spanish, said that appellant had a difficult
time understanding English, especially in terms of the court or legal
system.  Ultimately, in the therapist=s opinion, appellant signed the agreement because
she thought it was irrevocable and would ensure her lifetime visitation.

Of even greater concern is the testimony of the
CPS specialist and caseworker, who, on direct examination by the assistant
district attorney during the termination proceeding stated,

Q      And
it=s your understanding that [E.L.] has executed a Relinquishment of
Parental Rights?

 

A      Yes.

 

Q      And
in your knowledge, was it signed freely and voluntarily?

 

A      Yes,
it was.

 

Q      Did
the Department promise [E.L.] anything for signing the relinquishment?

 

A      No
promises were made.  [Emphasis added.]

 








While
this was a technically correct response because the Department was not a
signatory to the mediated settlement agreement or the Rule 11 agreement, at the
very least the statement is misleading to the court; it ignores the actuality
of the settlement negotiations and the Rule 11 agreement between the foster
parents and the mother, despite the Department=s clear knowledge of the basis for the
settlement.  In final arguments at the
motion for new trial hearing, the attorney for the Department even said that A[E.L.] was not misled into believing any promises
were given to her from the Department at any point.  We were not part
of any of the mediation proceedings in that we were not in the room with her.@  Thus, while
the Department wants to rely upon the Affidavit of Relinquishment as the basis
for termination of E.L.=s
parental rights, it is unwilling to even recognize that at the very least she
was misled about the permanence of the visitation rights after an adoption was
complete.  And more importantly, I would
conclude that the Department=s testimony before the trial court at the hearing
on the motion for new trial was incomplete at best.  For all these reasons, I would hold that E.L.
sufficiently submitted evidence showing her lack of voluntariness in the
execution of the Affidavit of Relinquishment and the execution of the mediated
settlement agreement and the Rule 11 agreement.

                                 En
Banc Review








This case was initially filed in our court on
October 10, 2007; it was submitted to a panel of three justices on April 1,
2008.  The original panel plurality
opinion was authored by Justice Dixon Holman on December 4, 2008; the chief
justice concurred without opinion while I dissented with opinion to the trial
court=s denial of the motion for new trial.  Appellant filed a motion for rehearing en
banc on December 19, 2008.  At the time
appellant filed her motion for rehearing en banc this court was still composed
of the same seven justices:  Chief
Justice Cayce, Justices Dauphinot, Holman, Gardner, Walker, McCoy, and
myself.  On December 31, 2008, Justice
Holman reached mandatory retirement.[2]

On January 1, 2009, Justice William C. Meier was
sworn in to Place 2, Senior Justice Holman=s previously vacated seat.  Thus, Justice Meier also participated in the
court=s ruling on the motion for rehearing en banc as
required by the rules.  See Tex.
R. App. P. 49.7.  Our court granted the
motion and resubmitted the case for oral argument on April 1, 2009, but by then
the en banc court was composed of eight justices, instead of the regular seven
justices.[3]








En banc consideration of a case is
disfavored.  See Tex. R. App. P.
41.2(c).  It should not be ordered Aunless necessary to secure or maintain uniformity
of the court=s
decisions or unless extraordinary circumstances require@ it.  Id.
(emphasis added).  There have been
several different interpretations of what constitutes extraordinary
circumstances, but the Texas Supreme Court has acknowledged that appellate
courts have the right to @consider
a case en banc if the circumstances require and the court votes to do so.@  See
Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 708 n.1 (Tex. 2003); see
also Unifund CCR Partners v. Villa, 273 S.W.3d 385, 392 (Tex. App.CSan Antonio 2008) (Marion, J., dissenting)
(stating, Awhen
there is no conflict among panel decisions, the existence of >extraordinary circumstances= is required before en banc consideration may be
ordered@ (emphasis added)), rev=d,
No. 08-1026, 2009 WL 3403326 (Tex. Oct. 23, 2009); Ex parte Ellis, 279
S.W.3d 1, 30 (Tex. App.CAustin
2008, pet. granted) (Henson, J., dissenting) (observing that need for en banc
review must be balanced with court=s mandate to do substantial justice and to hear
accelerated matters at the earliest practicable time, citing Tex. R. App. P.
31.2 and 41.2(c)); Rodriguez v. Cuellar, 143 S.W.3d 251, 263B64 (Tex. App.CSan Antonio 2004, pet. denied) (Lopez, C.J.,
dissenting) (complaining of majority opinion granting en banc review because of
the Ahigh degree of public interest . . . and to
maintain uniformity of the court=s decisions,@ and the impropriety of en banc review because
the majority Asimply
disagreed with the result that the panel majority reached@).








A Aplurality opinion@ is an Aappellate opinion without enough judges= votes to constitute a majority, but having
received the greatest number of votes of any of the opinions filed.@  Bryan A.
Garner, A Dictionary of Modern Legal Usage 419 (1987) (emphasis added).  AMajority@ is Aa number that is more than half of a total.@  Black=s Law Dictionary 1040 (9th ed. 2009).  Thus, the opinion we issue today is not a
majority opinion or even really a plurality opinion; it is merely a majority
judgment, thus ultimately not justifying en banc submission, something we could
not have known at the time we voted to go en banc.  

The final plurality opinion on rehearing en banc
reflects the following:  four justices believe that appellant
preserved her complaint at trial and on appeal regarding the voluntariness of
her signing the affidavit of relinquishment, and four justices believe she did
not.  However, because three justices
(those joining the concurring and dissenting opinion) also believe appellant
has other remedies available to her to enforce her rights, seven justices join
in the judgment only.

                                             Conclusion








Therefore, I would hold that appellant timely and
properly preserved her complaint as to the voluntariness of the affidavit of
relinquishment by raising the issue in her motion for new trial, that she
offered sufficient evidence to show the lack of voluntariness in the execution
of the affidavit because the terms of the mediated settlement agreement and
Rule 11 agreement were not properly incorporated into the Order on Termination
as agreed, and that we should retain and ensure the application of the clear
and convincing burden of proof on the proponents of the affidavit in conformity
with the L.M.I. plurality.  Therefore, I would hold that the
trial court abused its discretion in denying appellant=s motion for new trial, reverse the termination
order, and remand this case for a new trial. Thus, I respectfully dissent to
the result in this case for those reasons and also because there is no majority
or even plurality opinion in this en banc case.

 

 

TERRIE
LIVINGSTON

JUSTICE

 

DELIVERED: 
December 3, 2009

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-07-347-CV

 

 

IN THE INTEREST OF D.E.H., 

A MINOR CHILD                                                                                  

 

                                              ------------

 

           FROM THE 323RD DISTRICT COURT OF
TARRANT COUNTY

 

                                              ------------

 

CONCURRING AND DISSENTING OPINION 

TO OPINION ON EN BANC RECONSIDERATION

                                                    

                                              ------------

For the reasons set forth below, I agree with the
dissenting opinion that E.L. preserved her appellate complaint that her
affidavit of relinquishment was not executed voluntarily; I dissent from the
plurality opinion=s
holding to the contrary.  But, because I
believe that the mediated settlement agreement entered into by the parties is,
in fact, legally enforceable, I concur with the plurality opinion=s holding that the trial court did not abuse its
discretion by denying E.L.=s motion for new trial.








E.L. and her attorney, both of the foster parents
and their attorney, and the attorney ad litem for D.E.H. all signed a mediated
settlement agreement.  The mediated
settlement agreement complies with the requirements of family code section
153.0071(d), making it binding on the parties to the agreement.  See Tex. Fam. Code Ann. ' 153.0071(d) (Vernon Supp. 2009).  When a mediated settlement agreement meets
the requirements of section 153.0071(d), Aa party is entitled to judgment on the mediated
settlement agreement notwithstanding Rules 11, Texas Rules of Civil Procedure,
or another rule of law.@  Id. ' 153.0071(e).








The body of the parties= mediated settlement agreement simply contains
boilerplate provisions concerning the enforceability of the agreement; it
contains no specific agreed terms. 
Instead, the mediated settlement agreement states that the A[t]erms of the settlement are set out in Exhibit >A= attached to this agreement.@  At the
end of the agreement, after the provision AEACH PARTY UNDERSTANDS AND AGREES THAT THIS
AGREEMENT IS NOT REVOCABLE,@ is a handwritten notation that the Aattached Rule 11 is agreement of parties.@  A
three-page document titled ARule 11 Agreement@ is attached to the mediated settlement
agreement.  The rule 11 agreement
attached to and incorporated in the mediated settlement agreement is also
signed by all the parties.  That document
outlines the agreed-upon terms of the post-termination and post-adoption
visitation of D.E.H. by E.L.[1]

Following the execution of the mediated
settlement agreement incorporating the rule 11 agreement, E.L. executed an
affidavit of voluntary relinquishment, relinquishing her parental rights to
D.E.H.  The trial court subsequently
signed an order terminating E.L.=s parental rights to D.E.H. based solely on her
affidavit of voluntary relinquishment.  See
id. ' 161.001(1)(K) (Vernon Supp. 2009).

E.L. filed a motion for new trial and testified
at the motion for new trial hearing that she had signed the affidavit of
voluntary relinquishment in reliance on the provisions of the rule 11
agreement, which was incorporated into the parties= mediated settlement agreement and which provided
her with post-termination and post-adoption visitation with D.E.H.  E.L. now complains on appeal that because the
parties= agreement is purportedly legally unenforceable,
she was fraudulently induced into executing her affidavit of
relinquishment.  













I cannot agree with the plurality opinion=s conclusion that E.L. did not raise her appellate
complaint in the trial court.  The family
code expressly authorizes a parent to pursue a direct attack on a termination
order that is based on the parent=s affidavit of voluntary relinquishment on the
ground of fraud in the execution of the affidavit of relinquishment.  See id. ' 161.211(c) (Vernon 2008).  The Texas Supreme Court and numerous courts
of appeals have recognized that a false representation of a right to continued,
post-termination visitation made to a biological parent to encourage that
parent to sign an affidavit of voluntary relinquishment constitutes fraud.  See, e.g., Rogers v. Searle, 544
S.W.2d 114, 115 (Tex. 1976) (recognizing in bill of review proceeding that
fraudulent misrepresentations inducing execution of affidavit of voluntary
relinquishment constitute extrinsic fraud); Jones v. Tex. Dep=t of Protective & Regulatory Servs., 85 S.W.3d 483, 492B93 (Tex. App.CAustin 2002, pet. denied) (same); Queen v.
Goeddertz, 48 S.W.3d 928, 931B32 (Tex. App.CBeaumont 2001, no pet.) (same); In re S.A.B.,
No. 04-01-00795-CV, 2002 WL 1573431, at *3 (Tex. App.CSan Antonio July 17, 2002, pet. denied) (not
designated for publication) (same). 
Because E.L.=s
appellate complaint that she did not voluntarily sign the affidavit of
relinquishment is, exactly, an argument that she involuntarily signed the
affidavit of relinquishment because of fraud, I respectfully dissent from the
plurality opinion=s
holding that E.L. failed to preserve this complaint.[2]  













I nonetheless concur with the plurality opinion=s disposition of this appeal because I believe
that the parties=
mediated settlement agreement that incorporates the rule 11 agreement providing
for post-termination and continued post-adoption visitation of D.E.H. by E.L. is
legally enforceable, contrary to the position taken by the plurality opinion
and by the dissenting opinion.  The
family code expressly provides that, when a mediated settlement agreement meets
the requirements of section 153.0071(d), Aa party is entitled to judgment on the mediated
settlement agreement notwithstanding Rule 11, Texas Rules of Civil
Procedure, or another rule of law.@  See
Tex. Fam. Code Ann. '
153.0071(e) (emphasis added).  Here, the
mediated settlement agreement meets the requirements of section
153.0071(d).  Consequently, both E.L. and
the foster parents, as parties to the mediated settlement agreement, are Aentitled to judgment on the mediated settlement
agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another
rule of law.@  See id. (emphasis added).  ANotwithstanding Rule 11, Texas Rules of Civil
Procedure, or another rule of law@ means, by its plain language, notwithstanding
another rule of law set forth in the family code, that is, notwithstanding
sections 161.206(b) and 161.2062 (the provisions E.L. claims make the mediated
settlement agreement legally unenforceable). 
See id. ' 161.206(b)
(Vernon 2008) (providing that termination order divests parent and child of all
legal rights except child=s
right of inheritance); '
161.2062 (Vernon 2008) (providing that termination order Amay not require that a subsequent adoption order
include terms regarding limited post-termination contact@); Beyers v. Roberts, 199 S.W.3d 354, 358B59 (Tex. App.CHouston [1st Dist.] 2006, pet. denied) (holding
section 153.0071=s
Anotwithstanding any other law@ provision meant that the trial court could
enforce a mediated settlement agreement providing for joint managing
conservatorship with no designation of conservator who had right to determine
child=s primary residence despite section 153.133(a)(1)=s requirement for such designation); see also
In re L.M.M., 247 S.W.3d 809, 811B12 (Tex. App.CDallas 2008, pet. denied) (enforcing mediated
settlement agreement in child custody dispute); see generally, e.g., In re
Marriage of Joyner, 196 S.W.3d 883, 890 (Tex. App.CTexarkana 2006, pet. denied) (recognizing
absolute enforceabilty of mediated settlement agreements). 








Moreover, holding that the parties= mediated settlement agreement is enforceable is
not inconsistent with the provisions of family code sections 161.206(b) and
161.2062.  D.E.H. will retain the right
to inherit from E.L. if the mediated settlement agreement and its
post-termination, post-adoption visitation provisions are enforced.  See Tex. Fam. Code Ann. ' 161.206(b). 
And while family code section 161.2062 prohibits a termination order
from requiring that a subsequent adoption order include terms regarding
limited post-termination contact between the child and parent, that section
does not, on its face, prohibit a pre-termination agreement between
prospective adoptive parents and the biological parent concerning
post-termination visitation.  Even the
foster parents, who are the prospective adoptive parents here and who have
filed a response to E.L.=s
motion for en banc reconsideration, contend that the parties= mediated settlement agreement may be legally
enforceable.[3]








Finally, sections 161.206(b) and 161.2062 deal
generally with orders terminating parental rights while section 153.0071(d)
deals specifically with mediated settlement agreements.  A fundamental principle of statutory
construction is that a more specific statute controls over a more general one. Beyers,
199 S.W.3d at 359 (citing Horizon/CMS Healthcare Corp. v. Auld, 34
S.W.3d 887, 901 (Tex. 2000)).  The
government code provides that general and specific provisions should be
construed, if possible, to give effect to both, but when they cannot be
reconciled, the specific provision should prevail.  Id.; Tex. Gov=t Code Ann. ' 311.026 (Vernon 2005).  Thus, to the extent, if any, that enforcement
of the parties=
mediated settlement agreement conflicts with family code sections 161.206(b)
and 161.2062, section 153.0071Cspecifically dealing with mediated settlement
agreements in suits affecting the parent-child relationshipCcontrols.  See
Beyers, 199 S.W.3d at 359. 

Because I would hold that the parties= mediated settlement agreement, including
provisions for post-termination visitation, is legally enforceable and because
there has been no showing that the foster parents have violated this agreement,
I concur with the plurality opinion=s holding that the trial court did not abuse its
discretion by denying E.L.=s motion for new trial.

 

SUE WALKER

JUSTICE

 

DAUPHINOT and GARDNER, JJ., join.

 

DELIVERED: 
December 3, 2009

 











[1]The trial court also terminated A.H.=s parent-child relationship with D.E.H.





[2]Although E.L. lists three AIssues
Presented,@ her single APoint of Error@ encompasses each issue.





[3]Section 161.206(b) provides that Aan order
terminating the parent-child relationship divests the parent and the child of
all legal rights and duties with respect to each other, except that the child
retains the right to inherit from and through the parent unless the court
otherwise provides.@  Tex. Fam. Code Ann. ' 161.206(b) (Vernon 2008). 
Section 161.2061(a) reads as follows:

 

If the court finds it to be in the best interest of the child, the
court may provide in an order terminating the parent-child relationship that
the biological parent who filed an affidavit of voluntary relinquishment of
parental rights under Section 161.103 shall have limited post-termination
contact with the child as provided by Subsection (b) on the agreement of the
biological parent and the Department of Protective and Regulatory Services.

 

Id. ' 161.2061(a).  Section
161.2062(a) provides that A[a]n order
terminating the parent-child relationship may not require that a subsequent
adoption order include terms regarding limited post-termination contact between
the child and a biological parent.@  Id. ' 161.2062(a).





[4]In R.B., this court did not adopt the standard of review
suggested by the concurring and dissenting opinions in L.M.I., nor do we
adopt it here.  See R.B., 225
S.W.3d at 805 (stating that Awe need not
expressly decide that issue here@). 





[1]We did, however, indicate
agreement with the Dallas Court of Appeals=s
acknowledgment in N.P.T. that Athere is
considerable merit in applying@ the standard
proposed by the supreme court plurality in L.M.I.  See R.B., 225 S.W.3d at 805 & n.33
(citing In re N.P.T., 169 S.W.3d 677, 680 (Tex. App.CDallas 2005, pet. denied)). 





[2]Justice Holman was
appointed to sit on this case to hear and participate in the court=s decision on the motion for rehearing en banc while the motion was
pending.  See Tex. R. App. P.
41.2(a).





[3]Texas Rule of Appellate
Procedure 41.2(a) requires all members of the court to participate, as well as
a prior justice who originally heard the case.  Tex. R. App. P.
41.2(a).





[1]For example, the agreement
sets forth visitation Aafter the child turns 3@ and provides
that if E.L. misses two consecutive visits with D.E.H., all contact for E.L.
shall cease. 





[2]The position taken by the plurality opinionCthat AE.L.=s appellate argument that she did not voluntarily sign the affidavit
because the Rule 11 agreement is unenforceable is not an argument that she
involuntarily signed the affidavit of relinquishment because of fraud, duress,
or coercion@Chas been expressly rejected in a similar case.  See Vela v. Marywood, 17 S.W.3d 750,
763 (Tex. App.CAustin 2000), pet. denied, 53 S.W.3d 684 (Tex. 2001).  In Vela, the appellate court
explained,

 

Marywood [as the majority here] takes this testimony [testimony by the
mother that she was not physically threatened or coerced or defrauded into
signing the relinquishment affidavit] out of context.  [Biological mother] was not threatened,
coerced, or defrauded into physically signing the relinquishment
affidavit.  At the time she signed the
affidavit, [biological mother] did not know that the post‑adoption plan
was unenforceable and thus had no reason to believe that she would not have
access to her child.  [Biological mother=s] testimony cannot be considered evidence that the affidavit was
signed knowingly and voluntarily because she was testifying about her state of
mind before she knew that the post‑adoption plan was unenforceable.

 

Id.





[3]The foster parents point
out that while a termination decree (as opposed to an adoption decree) cannot
require post-termination, post-adoption visitation because the adoptive parents
cannot be forced to permit visitation, nothing would prohibit an adoption
decree from including an agreement between the adoptive parents and the
biological parent permitting post-adoption visitation.  The foster parents also point out that
although section 161.206(b) divests a biological parent of legal rights and
duties Ainnately accompanying the parent-child relationship@ it does not divest a biological parent of any contractual rights
negotiated by the biological parent such as those set forth in the mediated
settlement agreement here.